# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS (FORT WORTH)

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY 1 8 2020
CLERK, U.S. DISTRICT COURT
By_____
        Deputy
```

UNITED STATES OF AMERICA,

V.                                    Case No. 4:16-CR-00132-A-22

HOLLY LEANNE FRANTZEN,

      Defendant

_____/

## MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582 FOR COMPASSIONATE RELEASE

COMES NOW, Holly Frantzen, ( hereinafter, "Frantzen" or "defendant"), pro se, respectfully moves this Honorable Court pursuant to 18 U.S.C. § 3582(c)(2) and the newly amended 18 U.S.C. §3582(c)(1)(A)(i) for an order reducing her sentence to time served based on her age (49), declining health, and COVID-19. Frantzen circumstances satisfy the "extraordinary and compelling reasons" under §3582, as elaborated by the Sentencing Commission in U.S.S.G.§1B1.13. After considering the applicable factors set forth in 18 U.S.C. §3553(a).

1

## I.   INTRODUCTION

In December 2018, Congress enacted the First Step Act ("FSA") which modified Title 18 of United States Code Section 3582(c)(1) to allow a defendant to bring a motion for modification of sentence where "extraordinary and compelling reasons warrant such a reduction[.]" In December, 2016, Frantzen was sentenced to the Bureau of Prisons for a term of 200 months for 21:846 Conspiracy to Possess with Intent to Distribute a Controlled Substance. Over the past 4 years, a great deal has changed. Frantzen suffered a sudden cardiac arrest.

Attorney General William Barr in late March ordered the Bureau of Prisons (BOP) to begin working to release nonviolent federal inmates into home confinement if they met certain criteria, and later expanded the pool of people who could qualify after declaring the BOP was facing emergency conditions due to the Coronavirus pandemic. On April 28, the first female inmate serving a 26-month sentence died of COVID-19 after giving birth to her child, while she was on a ventilator, according to the U.S. Bureau of Prisons. Upon arrival at the Federal Medical Center in Fort Worth Texas, the same facility Frantzen is housed due to medical issues, the inmate was quarantined and later died. At least 39 federal inmates have died since April of COVID-19. According to the data collected from The Marshall Project, approximately 9,437 prisoners have caught the coronavirus and the number of cases has grown more than threefold in the last week alone.

The Novel Coronavirus COVID-19 has presented significant challenges around the world and has proven deadly. For these compelling reasons, Frantzen respectfully prays that this Court will grant her a reduction in her sentence and immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A) based on extraordinary and compelling circumstances.

## II.   BACKGROUND

On December 23, 2016, Frantzen was sentenced to 200 months imprisonment and 4 years supervised release. Frantzen is now 49 years old and in failing health. Frantzen requested a reduction in sentence (RIS) based on concerns about COVID-19. On April 17, 2020, M. Carr, Warden denied her request (Exhibit A). Due to the increased infection rate of COVID-19, Frantzen is requesting the Court to grant her Compassionate Release.

### III.   A REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)(i) IS WARRANTED

Frantzen is currently 49 years old and is a survivor of sudden cardiac death which makes her vulnerable for contracting COVID-19. In June 2019 at Aliceville prison, Frantzen suffered a sudden cardiac death (cardioverted for ventricular tachycardia arrest/ventricular fibrillation) according to her medical report (*see* Exhibit B). Frantzen initial LVEF (Left Ventricular Ejection Fraction) was less than 30% which subsequently improved. Frantzen had on Echocardiogram which revealed extensive anterior, anteroseptal, anterolateral and apical akinesis, grade III relaxation abnormality, no significant valular heart, and an estimated LVEF of 25%-30% (*see* Exhibit B). Frantzen is currently taking Aspirin 81 MG Tablet Delayed Release orally once a day, Atorvaslatin Calcium (40 MG) Tablet 1 tablet orally once, Carvedilol (6.25 mg) tablet as directed orally twice a day and Losartan Potassium Tablet (25 mg). In addition to Venlafaxine ER/XR 24 hour and Mirtazapine (daily). She has a pacemaker/difibulator for irregular heart.

Frantzen suffers from PTSD due to cardiac death, Depression, Anxiety, Attention Deficit Hyperactivity Disorder (ADHD) and Scoliosis. Frantzen past medical history includes Systolic and diastolic heart failure, Nonsustained ventricular tachycardia (NSVT), Depression Scoliosis, and anxiety.

Furthermore, consideration of the factors enumerated under 18 U.S.C § 3553(a) supports granting § 3582(c)(1) relief. Over the few years, Frantzen has shown herself to be a model inmate in the BOP. She has taken numerous courses and programming up until her maladies prevented her from doing so. Frantzen extensive course included a certificate from a drug class, NA 12-week class, rest base fitness class, pool class, painting class, mystery hobby class, discipleship class, and is currently on the waiting list for RDAP- the BOP Drug Program (Exhibit C). Frantzen worked fulltime in plumbing; she received a Monetary Achievement Award for her work in plumbing.

In the years of Frantzen's incarceration she has taken advantage of courses the BOP has offered and acquired a skill she may use upon returning to society if permitted to work by a medical doctor. Frantzen has maintained an exemplary prison record with no infractions (Exhibit D). She has stayed away from any violence in prison and maintains a constant bond with her father and family. She is an ideal candidate for an immediate release and will continue to strive upon her return to society.

3

Lastly, Frantzen has the love and support of her father and sister (*see* Exhibit E). Frantzen wants to make amends for her crime by helping young people stay off the path that would lead to use of drugs. She would like to be a motivational speaker to young adults helping them to reach their highest potential.

Frantzen poses no threat to society and her debilitating health further increases the chance of her dying in prison.

## IV.   EXTRAORDINARY AND COMPELLING CIRCUMSTANCES

### (i) CHANGES MADE TO COMPASSIONATE RELEASE STATUE

With the changes made to the compassionate release statute by the First Step Act, courts need not await a motion from the Director of BOP to resentence prisoners under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons." Importantly, the reasons that can justify resentencing need not involve only terminal illness or urgent dependent care for minor children.

Congress first enacted the modern form of the compassionate release statute, codified at 18 U.S.C. § 3582, as part of the Comprehensive Crime Control Act of 1984. Section 3582(c) states that a sentencing court can reduce a sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In 1984, Congress conditioned the reduction of sentences on the BOP Director's filing of an initial motion to the sentencing court. Absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for compassionate release. *Id.*

Congress never defined what constitutes an "extraordinary and compelling reason" for resentencing under Section 3582(c). But the legislative history to the statute gives an indication of how Congress thought the statute should be employed by the federal courts. The Senate Committee stressed how some individual cases, even after the abolishment of federal parole, still may warrant a second look at resentencing.

The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter

term of imprisonment. S. Rep. No. 98-225, at 55-56 (1983) (emphasis added). Frantzen has sought relief and is still sentenced to a term of 200 months.

Congress intended that the circumstances listed in § 3582(c) would act as "safety valves for modification of sentences," *id.* at 121, enabling judges to provide second looks for possible sentence reductions when justified by various factors that previously could have been addressed through the abolished parole system. This safety valve statute would "assure the availability of specific review and reduction of a term of imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to changes in the guidelines." *Id.*

Noting that this approach would keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, the statute permitted "later review of sentences in particularly compelling situations." *Id.* (emphasis added).

Congress initially delegated the responsibility for outlining what could qualify as "extraordinary and compelling reasons" to the U.S. Sentencing Commission ("Commission"). See 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

The Commission took considerable time to promulgate its policy in response to Congress's directive. It finally acted in 2007, almost a generation later, with the very general guidance that "extraordinary and compelling reasons" may include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A). However, this guidance did little to spur the BOP to file on behalf of prisoners who might have met these general standards. After a negative Department of Justice Inspector General report found that the BOP rarely invoked its authority under the statute to move for reduced sentences, the Commission felt compelled to act again. See U.S. Dep't of Justice, Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program, I-2023-006 (Apr. 2013). The Commission amended its policy statement on "compassionate release" in November 2016. See U.S.S.G. § 1B1.13 Amend. (11/1/2016). In addition to broadening the eligibility guidelines for sentencing courts, the new policy statement admonished the BOP for its past failures to file motions on behalf of inmates who had met the general criteria identified in U.S.S.G. § 1B1.13. See U.S.S.G. § 1B1.13, n.4; see also United States v. Dimasi, 220 F. Supp. 3d 173, 175 (D. Mass. 2016) (discussing the history of the BOP, DOJ and Commission's interplay in developing guidance for "compassionate release" motions). Notably, the Commission concluded that reasons beyond medical illness, age, and family

circumstances could qualify as "extraordinary and compelling reasons" for resentencing. *Id.*, n.1(A) (including a category for "Other Reasons," when there is "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."). But see United States v. Cantu, No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019) (holding that, given the changes to the compassionate release statute by the First Step Act, U.S.S.G. § 1B1.13, application note 1(D) "no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence- modification provisions under § 3582."); United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); United States v. Cantu- Rivera, No. CR H-89-204, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019) ("Because the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect."); United States v. Beck, No. 1:13-CR-186- 6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (holding that application note 1(D) is "inconsistent with the First Step Act, which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate," and courts thus may "consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to the old policy statement"); but see United States v. Lynn, No. CR 89-0072- WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019) (holding that application note 1(D) governs compassionate release reductions of sentence and federal judges have no authority to create their own criteria for what constitutes an "extraordinary and compelling" reason for resentencing).

The Commission's actions, however, did little to change the dearth of filings by the BOP on behalf of inmates who satisfied the Commission's general guidance. During the more than three decades during which the BOP was the exclusive gatekeeper for "compassionate release" motions, very little effort was made to implement Congress's intention to provide a safety valve to correct injustices or allow relief under extraordinary and compelling circumstances.

Finally, this changed with the passage of the First Step Act in 2018. See P.L. 115-391, 132 Stat. 5194, at § 603(Dec. 21, 2018). Section 603 of the First Step Act changed the process by which § 3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and move for release, a court can now resentence "upon motion of

the defendant," after the inmate exhausted administrative remedies with the BOP, or after 30 days from the receipt of the inmate's request for compassionate release with the warden of the defendant's facility, whichever comes earlier. 18 U.S.C. § 3582(c)(1)(A). Thus, under the First Step Act, a court may now consider the defendant's own motion to be resentenced, without waiting for it to be made by the BOP. It can also construe the exhaustion requirement as futile given the urgency of this national emergency and rapid spread of the pandemic.

It appears that some courts have waived that requirement when faced with "the extraordinary threat posed—in . . . unique circumstances—by the COVID-19 pandemic." United States v. Perez, No. 17 CR. 513- 3 (AT), 2020 WL 1546422, at *1 (S.D.N.Y. Apr. 1, 2020). In Perez, the court noted:

> "Even where exhaustion is seemingly mandated by statute ..., the requirement is not absolute." Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019) (citing McCarthy v. Madigan, 503 U.S. 140, 146–47, 112 S. Ct. 1081, 117 L.Ed.2d 291 (1992)). There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decision makers are biased or because the agency has already determined the issue." Id. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." Id. at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." Id. Perez, 2020 WL 1546422, at *2.

Under the circumstances of this the Defendant requested a reduction of sentence for compassionate release and was denied. At this particular time, the court should consider excusing a failure to exhaust. Defendant has diligently pursued any known avenue of release over the past several years and has acted quickly in light of the current pandemic. Further delay to pursue administrative remedies could be calamitous.

**(ii)     THE CONDITIONS OF BOP INCARCERATION FOSTER THE SPREAD OF COVID-19, AND FRANTZEN'S AGE AND DECLINING HEALTH RENDER HER PARTICULARLY SUSCEPTIBLE TO AN UNREASONABLE RISK OF DEATH AND AN INABILITY TO TAKE PREVENTATIVE MEASURES OR SELF-CARE RECOMMENDED BY THE CDC**

With the COVID-19 pandemic, COVID-19 has found its way into Carswell Federal Medical Center, where Frantzen is housed. Conditions of confinement at Carswell Federal Medical Center create an optimal environment for the transmission of contagious disease. The novel Coronavirus is rampant at a Fort Worth federal prison that houses sick and elderly inmates. The facility has emerged as a COVID-19 hot spot, setting staff and inmates on edge and fueling controversy over how the prison system is handling the pandemic according to The Dallas Morning News.

People who work in the facility leave and return daily; people deliver supplies to the facility daily; inmates were having social, legal and medical visits regularly after the initial spread of the virus prior to the BOP's decision to stop visits for 30 days on March 13, 2020. Public health experts are unanimous in their opinion that incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe," and "infection control is challenging in these settings." "Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States" (March 2, 2020), at https://bit.ly/2W9V6oS.

Frantzen is powerless to take the preventative self-care measures directed by the CDC for his high-risk group to remain safe from COVID-19 infection. She cannot self- quarantine or partake in "social distancing" in her prison facility. There are also community spaces where inmates and prison staff gather throughout the Federal Bureau of Prisons, including a common room, laundry facilities, medical areas, dining hall, small library and gym. These high-density areas are precisely the kind of spaces that have caused the alarmingly high-spread rates of COVID-19 in prison.

Hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in jails and prisons because of its alcohol content. Correctional health experts worry that no matter what precautions are taken by crowded prisons, these facilities may become incubators for the COVID-19 disease.

During the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases because they could not maintain the level of separation and sanitation necessary to prevent widespread infection. "Prisons and Jails are Vulnerable to COVID-19 Outbreaks," The Verge (Mar. 7, 2020), available at https://bit.ly/2TNcNZY.

The Prison Policy Initiative has called on American jails and prisons to release medically fragile and older adults, noting that these persons are at high risk for serious complications and even death from COVID-19. Similarly, members of Congress have written to the BOP to urge that efforts be made to allow immediate release of non-violent, elderly inmates (like Moreno). Letter of Representatives Jerrold Nadler and Karen Bass (March 19, 2020) ("DOJ and BOP must also do all they can to release as many people as possible who are currently behind bars and at risk of getting sick. Pursuant to 18 U.S.C. 3582(c)(1)(A), the Director of the Bureau of Prisons may move the court to reduce an inmate's term of imprisonment for "extraordinary and compelling reasons."). In a recent report data collected from the Marshall Project reveals there are approximately 9,437 prisoners have caught the Coronavirus and the number of cases has grown more than threefold in the last week. In fact, out of 2,700 prisoners tested 2,000 were infected with the novel Coronavirus. As of April 29, 2020, 39 federal inmates' deaths are due to COVID-19 and 1 BOP staff death from an Atlanta Federal Penitentiary. And because of the strong potential for BOP facilities to become "petri dishes," the Attorney General recently issues a directive to the BOP that at-risk prisoners be considered for placement on home confinement.

Given that Frantzen is (49) years old, and she suffers from significant underlying health issues that make her exceptionally vulnerable to COVID-19, compelling and extraordinary circumstances exist to support compassionate release at this unique time in our country's history. There is an urgent need to act now, before the virus spreads within the prison and Frantzen becomes infected. In sum, the risk posed by infectious diseases in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected.

In summary, the COVID-19 virus is highly transmissible, extraordinarily dangerous, and poses a severe threat of death to the high-risk medical profile of. The conditions at Carswell do not allow Frantzen to take the self-care measures required by the CDC to protect her safety.

Accordingly, this Court should find that, in light of the heightened medical risk presented to Frantzen by the COVID-19 pandemic, there are extraordinary and compelling reasons to reduce Frantzen's sentence in the manner requested—to wit, releasing her from custody and/or requiring her to serve her sentence release on home confinement, on specified conditions.

This conclusion is supported by the application of the §3553(a) factors. Frantzen has served a substantial amount of her prison sentence. Section 3553(a) requires a sentencing court to consider the "history and characteristics of the defendant" and "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). Viewed now in the light of a raging and virulent pandemic that has entered federal prisons and that poses a special risk to Frantzen's health, these factors, together, now warrants a reduction in the sentence to time served. For reasons including those set out at length supports that Frantzen no longer will present a meaningful danger to the community if at liberty. And the conditions of her forthcoming home confinement will meaningfully restrict her freedom of movement during the remainder of the sentence.

### (iii)     APPOINTMENT OF COUNSEL

Most Court have established procedures to review the sentences of currently incarcerated individuals that the United States Sentencing Commission ("USSC") has identified as potentially eligible for a modification of their term of imprisonment in accordance with the First Step Act. Defendants Identified by the USSC as Potentially Eligible for a Modification of an Imposed Term of Imprisonment. The Court will, pursuant to 18 U.S.C. § 3582(c)(1)(B), review the list of cases of potentially eligible, and currently incarcerated, defendants provided to it by the USSC. The United States Probation Office ("Probation") shall prepare an analysis of the First Step Act's impact and shall recommend a modified sentence, if appropriate. After reviewing Probation's recommendation, the Court may enter an order that appoints counsel for the defendant, directs Probation to make it analysis available to the defendant or defense counsel and the United States; directs the United States to file a response to the recommendation within 14 days; and permits the defendant or defense counsel to file a reply to the United States' response within 14 days of service of the response.

Motions for Relief under the First Step Act if a pro se defendant submits a letter to the Court requesting relief under the First Step Act, the Clerk shall accept the letter and file it as a motion for relief under the First Step Act. The Court shall review such letters in accordance with the procedures set forth herein. Appointment of counsel is not required. However, the Court in its discretion and pursuant to the provisions of the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, may appoint counsel to defendants identified by the USSC as potentially eligible for relief under the First Step Act. The Court also may appoint counsel for defendants who are not on the list but have filed a motion and have been determined to be potentially eligible for relief. If a defendant was appointed counsel previously under the CJA, the Court will assume that the defendant is indigent, and counsel may be appointed. If a defendant previously was represented by retained counsel, the Clerk of the Court shall contact retained counsel to determine if he or she intends to continue representation of the defendant.

When a defendant files a motion seeking a sentence modification under the First Step Act, whether in a pro se capacity or through counsel, Probation shall, upon the assigned judge's request, prepare an analysis of the First Step Act's impact on the defendant's sentence. As part of its analysis Probation shall recommend a modified sentence, if appropriate. If Probation concludes, and the Court agrees, that the defendant is entitled to relief Court may enter an order that appoints the defendant counsel (if appropriate), directs Probation to make its report available to the defendant or defense counsel, directs the United States to file a response to the defendant's motion within 14 days; and permits the defendant or defense counsel to file a reply to the United States' response within 14 days of service of the response. If Probation concludes, and the Court agrees, that the defendant is not entitled to relief the Court may enter an order that directs the United States to file a response to the defendant's motion within 14 days, and permits the defendant (whether represented by counsel or proceeding pro se) to file a reply to the United States' response within 14 days of service of the response.

## V.   CONCLUSION

While Frantzen was sentenced to 200 months in prison, she should not have to die an undignified death by a virus. Frantzen's medical circumstances are the exact "extraordinary and compelling" circumstances contemplated by Congress in writing 18 U.S.C.§ 3582(c)(1)(A) and expounded in the First Step Act of 2018. Frantzen has not received any sentence reduction since her incarceration. Extraordinary and compelling reasons and the U.S.C. § 3553(a) factors warrant a reduction in Frantzen's sentence to time served. For the foregoing reasons, Frantzen respectfully requests that the Court grant a reduction in sentence to time served, amend the condition of supervised release as requested and appoint an attorney for the proceedings herein.

Respectfully Submitted,

/s/ *Holly Leanne Frantzen*

Holly Leanne Frantzen, pro-se

Dated: *May 14th*, 2020.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on *May 14*, 2020 the foregoing PRO-SE MOTION IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO THE FIRST STEP ACT OF 2018 was served upon the U.S. Attorney for the Northern District of Texas via U.S. mail and pre-paid.

*Holly Leanne Frantzen*

Holly Leanne Frantzen, pro-se
Reg. No. 54447-177
Federal Medical Center
P.O. BOX 27137
Fort Worth, TX 76127

# Memos/Attachment

# U.S. House of Representatives

## Committee on the Judiciary

### Washington, DC 20515–6216

#### One Hundred Sixteenth Congress

March 12, 2020

The Honorable William P. Barr
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dear Attorney General Barr:

This week, the World Health Organization declared the novel coronavirus (or COVID-19) a global pandemic. Reports indicate that the virus has infected at least 125,000 people worldwide and has led to over 4,300 deaths to date. I write to inquire about the measures taken by the Department of Justice to ensure the health and welfare of prisoners in the custody of the Bureau of Prisons (BOP) and the U.S. Marshals Service (USMS) during this crisis. I write also to inquire about measures taken to ensure the health and welfare of staff and correctional officers who assist in housing and transporting prisoners in the custody of the BOP and the USMS.

I am especially concerned because the incarcerated and justice-involved populations contain a number of groups that may be particularly vulnerable to COVID-19. In particular, health conditions that make respiratory diseases more dangerous are far more common in the incarcerated population than in the general U.S. population.

I also believe it would be important, at this time, for DOJ to consider measures that can be taken to reduce the number of prisoners in government custody. Specifically, I believe DOJ should consider directing U.S. Attorney's Offices, wherever possible, to not seek the detention of individuals at their initial appearance in court, decline prosecuting minor, non-violent offenses, and decline pursuing supervised release and probation revocations that involve technical and minor violations.

Because of my concerns about these serious issues, I ask the following:

1. Has the Justice Department given any direction or guidance to the BOP and the USMS for dealing with COVID-19? If so, please provide the specific text of the guidance provided.

2. Whether in response to direction or guidance from DOJ or not, have the BOP and the USMS developed their own policies and procedures regarding COVID-19? Please provide copies of any and all such policies and procedures.

   a. If so, have these policies and procedures been distributed to each facility, including contract facilities?

b. What specific measures have been taken to ensure that these policies and procedures are being implemented in contract facilities that are not BOP-run?

    i. If these policies and procedures are not being implemented in contract facilities, please explain why not and what, if any, alternative measures are being taken to ensure the health and welfare of inmates who are incarcerated in those contract facilities.

3. Have the BOP and the USMS, respectively, designated point persons within their agencies to address COVID-19? Please provide the name and title of each person so designated and their qualifications for the position.

4. Have additional precautionary measures been taken with respect to sanitation and hygiene, including frequent cleaning and ready availability of soap and tissues?

5. Is there a comprehensive testing protocol being implemented across the board in BOP facilities and contract facilities? If not, why not?

6. Are inmates entering BOP and contract facilities being tested at the time of intake? If not, why not? Conversely, are inmates being tested at the time of their release from BOP or contract facilities?

7. At this time, are any prisoners in the custody of BOP and the USMS being monitored for signs of infection?

8. Are testing kits being made available to the BOP and contract facilities? If so, how quickly are test results being released?

9. What measures have been taken to ensure that any prisoners testing positive for COVID-19 are isolated and treated? What about those who have exposed to those who test positive?

10. What protocols exist, once a positive case is discovered, to ensure that the rest of the prisoners in the facility are not exposed? Are any special measures being taken to ensure high-risk prisoners are not exposed?

11. What is the protocol for deciding when to transport a prisoner with COVID-19 for care at a hospital?

12. What protocols exist with regards to attorney and family visits? How are attorneys and family members being notified if a client or family member, respectively, tests positive for COVID-19?

13. What is the protocol for transporting inmates to court for hearings?

14. Are specific measures being taken to ensure staff at the facilities (whether BOP-run or contract facilities) have leave available if they develop symptoms of COVID-19? Are special measures being taken to ensure staffing levels are adequate at all times?

Because of the urgency of this matter, I ask that you respond in writing as soon as possible,

Sincerely,

Jerrold Nadler
Chairman

cc:    Jim Jordan
       Ranking Member

# Exhibit A



# U. S. Department of Justice

Federal Bureau of Prisons

Federal Medical Center, Carswell

*P.O. Box 27066, J Street, Bldg 3000*
*Fort Worth, Texas 76127*

April 17, 2020

MEMORANDUM FOR FRANTZEN, HOLLY
                Reg. No. 54447-177

FROM:              M. Carr, Warden

SUBJECT:         Compassionate Release/Reduction In Sentence (RIS)

You requested a reduction in sentence (RIS) based on concerns about COVID-19. After careful consideration, your request is denied.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)</u>, provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. Accordingly, your RIS request is denied at this time.

If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

Exhibit B

8/5/2019 5:24 PM   FROM: Fax Cardiology Associates Of West Alabama   TO: 13172296468   PAGE: 004 OF 006

Summary View for Frantzen, Holly | Account Number:10013404                     Page 1 of 3

FCI Aliceville
54447-177



**Cardiology Associates of West Alabama**
NORTH EDGE MEDICAL CENTER

# Frantzen, Holly
49 Y old Female, DOB: 05/10/1970
Account Number: 10013404
10700-10798 HWY 27, ALICEVILLE, AL-35448-2603
Home: 800-456-2078
Guarantor: Frantzen, Holly   Insurance SEVEN CORNERS
Payer ID: 35404
PCP: Deepak Chandramohan
Appointment Facility: Cardiology Associates Of West Alabama

07/22/2019                                                    Inglis Whitney, NP

### Current Medications
Taking
• Aspirin 81 MG Tablet Delayed Release 1 tablet Orally Once a day
• Atorvastatin Calcium 40 MG Tablet 1 tablet Orally Once a day
• Carvedilol 6.25 MG Tablet as directed Orally Twice a day
• Medication List reviewed and reconciled with the patient

### Past Medical History
Systolic and diastolic heart failure.
NSVT.
Depression.
Never tested for sleep apnea.
Scoliosis.
Anxiety/depression.

### Surgical History
ICD placement 06/19/2019

### Family History
No family history documented.

### Social History
Tobacco Use:
Tobacco Use/Smoking Patient is a former smoker.
Drugs/Alcohol:
Alcohol Screening Did you have a drink containing alcohol in the past year? Yes, How often did you have a drink containing alcohol in the past year? Never (0 point), Points 0, Interpretation Negative. Drugs Have you used drugs other than those for medical reasons in the past 12 months? Yes, Are you still using? No, Methamphetamine? Yes.

### Allergies
N.K.D.A.

### Hospitalization/Major Diagnostic Procedure
Chest Pain (Cardiac Arrest) 06/04/2019

### Reason for Appointment
1. Hospital follow up after cardiac arrest and ICD implant (Hospital 06/2019) after cardiac arrest, cath, ICD implant)
2. TTE 06/04/2019

### History of Present Illness
Presenting Complaints:
Ms. Frantzen presents today for a cardiology follow up after ICD placement. There are no complaints of anginal symptoms, shortness of breath, palpitations, pre-syncope, or syncope.
Basic Cardiovascular History:
Ms. Frantzen is a survivor of sudden cardiac death was cardioverted for ventricular tachycardia arrest/ventricular fibrillation at Aliceville Prison in June 2019. Her initial LVEF was less than 30% which subsequently improved. Cardiac catheterization at that time revealed low right heart pressures with RA mean 2, RV 26/1, PAP 23/2/11, PCWP mean 6, LVEDP 3-4mmHg, and cardiac output by thermodilution was 5.7 liters per minute. LVEF was estimated at >55%. No significant CAD was noted. Bradycardia was noted and IV Amiodarone was discontinued on 06/05/19 with no recurrence of VT. After consultation with Birmingham EP, she underwent insertion of a dual chamber ICD on 06/18/19 for secondary prevention.
Echocardiogram in June 2019 revealed extensive anterior, anteroseptal, anterolateral, and apical akinesis, grade III relaxation abnormality, no significant valvular heart disease, and an estimated LVEF of 25-30%.

### Vital Signs
HR 75 /min, Ht 60 in, Wt 141 lbs, BMI 27.53 Index, Ht-cm 152.4 cm, Wt-kg 63.96 kg.

### Examination
General Exam:
Appearance: well developed and well nourished, in no distress.
HEENT:
Eyes No conjunctival infection. No Xanthelasma.
Neck:
Jugular Venous Distention: Absent.
Carotid volume: normal.
Carotid upstroke normal.

Patient: Frantzen, Holly   DOB: 05/10/1970   Progress Note: Inglis Whitney, NP   07/22/2019
Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

8/5/2019 5:24 PM  FROM: Fax Cardiology Associates Of West Alabama  TO: 13172296468  PAGE: 005 OF 006

Summary View for Frantzen, Holly | Account Number:10013404

## Review of Systems

**General/Constitutional:**
Denies Fatigue. Denies Fever.
**Respiratory:**
Denies Cough. Denies Shortness of breath. Denies Wheezing.
**Cardiovascular:**
Denies Pre-syncope. Denies Syncope. Denies Chest pain. Denies Palpitations.
**Musculoskeletal/Extremities:**
Denies Leg cramps. Denies Muscle aches. Denies Weakness.
**Peripheral Vascular:**
Denies Pain/cramping in legs after exertion.
**Skin:**
Denies Itching. Denies Rash.
**Neurologic:**
Denies Balance difficulty. Denies Dizziness.
**Psychiatric:**
Admits Alert and oriented to person, place and time.. Denies Snoring. Denies Difficulty sleeping.

## Cardiovascular Exam::

Heart: regular rate and rhythm.
Heart sounds: S1 and S2 are normal. No significant murmur is present.
**Respiratory Exam::**
Effort: unremarkable.
Lungs: clear to auscultation.
**GI Exam::**
Palpation: soft, nontender, nondistended, no hepatosplenomegaly, no organomegaly.
**Musculoskeletal::**
Extremities: no leg edema, no clubbing, no cyanosis.
**Skin Exam::**
Appearance: No rashes or petechiae.
**Neurological/Psychiatric::**
Mental Status: alert and oriented x 3.
Mood and Affect: normal.

## Assessments

1. Chronic combined systolic (congestive) and diastolic (congestive) heart failure - I50.42 (Primary)
2. Ventricular tachycardia - I47.2
3. Presence of automatic (implantable) cardiac defibrillator - Z95.810
4. Essential (primary) hypertension - I10

## Treatment

1. **Chronic combined systolic (congestive) and diastolic (congestive) heart failure**
Start Losartan Potassium Tablet, 25 MG, 1 tablet, Orally, Once a day, 30 day(s), 30, Refills 11
   IMAGING: Electrocardiogram (EKG) NSR AT 75 BPM. PRWP. LOW VOLTAGE.
Notes: INITIAL LVEF <30% ON ECHOCARDIOGRAM BUT HAD IMPROVED ON CATH. ICD PLACED AFTER DISCUSSION WITH EP SPECIALIST DUE TO VT/VF ARREST. CONTINUE COREG. SHE STATES THAT LISINOPRIL WAS DISCONTINUED AT PRISON SECONDARY TO COUGH. RECOMMEND THAT SHE BE ON LOSARTAN 25 MG DAILY. COREG CAN ALSO BE INCREASED AS BP TOLERATES TO 25MG BID. .
Clinical Notes: Fluid intake control (less than 1500 cc daily), low sodium diet weight management, medication compliance.

2. **Ventricular tachycardia**
Notes: DEVICE INTERROGATION TODAY REVEALED NO ARRHYTHMIA. CONTINUE BETA BLOCKER.

3. **Presence of automatic (implantable) cardiac defibrillator**
Notes: Site check: dressing, steri-strips and 2 staples removed. Incision edges approximated. Incision appears to be healed. No redness, edema or drainage noted. Site cleaned with betadine. Antibiotic ointment applied. Site covered with gauze and transparent dressing and instructed to remove later today.
Clinical Notes: ICD site is well-healed. Continue scheduled device clinics and remote follow-ups.

---

Patient: Frantzen, Holly  DOB: 05/10/1970  Progress Note: Inglis Whitney, NP  07/22/2019
Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

https://alcawaspy.ecwcloud.com/mobiledoc/jsp/catalog/xml/printChartOptions.jsp?encounte...  8/5/2019

8/5/2019 5:24 PM  FROM: Fax Cardiology Associates Of West Alabama  TO: 13172296460  PAGE: 006 OF 006

**4. Essential (primary) hypertension**
Notes: RECOMMEND LOSARTAN BE STARTED AND COREG
INCREASED TO 12.5 MG BID THEN 25 MG BID AS BP TOLERATES.
ACCORDING TO STAFF WITH PATIENT. RECOMMENDATIONS
CAN BE MADE AND PHYSICIAN AT THE PRISON WILL
ULTIMATELY MAKE THE CHANGES.

**5. Others**
Continue Atorvastatin Calcium Tablet, 20 MG, 1 tablet, Orally, Once a
day, 90 days, 90 Tablet, Refills 6

**Procedure Codes**
93000 -ELECTROCARDIOGRAM, COMPLETE
CHECK SITE CHECK-GLOBAL

**Follow Up**
6 Months (Reason: follow up)

**Electronically signed by Whitney Inglis , CRNP on
08/02/2019 at 10:11 AM CDT**

**Sign off status: Completed**

Cardiology Associates Of West Alabama
4401 WATERMELON RD
NORTHPORT, AL 354735197
Tel: 205-343-2811
Fax: 205-391-0900

Patient: Frantzen, Holly   DOB: 05/10/1970   Progress Note: Inglis Whitney, NP   07/22/2019

Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

**DCH Healthcare Authority**
**809 University Boulevard East**
**Tuscaloosa, AL 35403**

**Patient Name:** FRANTZEN,HOLLY
**Med Rec #:** M003134914
**Date:** 06/20/19

## Patient Health Summary

Discharge Instructions:

Physician Instructions
Diet Cardiac/Modified Fat,NAS
Activity Activity as tolerated
Primary Care Follow-up:
    In: prison MD to follow
Additional Instructions:
Cardiac arrest:
Unclear etiology; it appears the elevated cardiac biomarkers may have been secondary to the arrest
rather than due to an NSTEMI, which caused it; patient may have had a pulmonary cause or arrhythmia
leading to the arrest
-LHC normal, and patient's cardiac function appears to have improved somewhat
-ICD for secondary prevention placed 6/19

Hypotension, resolved

Fever:
resolved
completed Zosyn

NSTEMI related to decreased cardiac perfusion from cardiac arrest:
continue aspirin

Acute hypoxemic respiratory failure:
improved
s/p extubation, off supplemental O2
Dr. Aslam's follow up appreciated

Nonsustained Vtach: ICD today as per cardiology

Acute systolic and diastolic CHF:
EF – 25 -30%, grade 3 DD, now apparently improved somewhat on LHC
- Started on carvedilol dose as per Dr. Kamal and very low dose lisinopril
Discharge Plan:
Problem: See problems listed above.

Goal: Resolution of problems

Instructions:
* Keep all follow up and referral appointments.
* Take your medications as instructed.
* Follow all discharge instructions.
* If your condition changes or you have questions regarding your instructions, please contact your
primary care physician.
* Take your medication list with you to all healthcare related visits and appointments.

Discharge To: Correctional Fac/Jail

Additional Followup Appointment:
    FOLLOWUP WITH DR. SAKINA KAMAL ON MONDAY,JULY 8th AT
    9:30am FOR ICD TEACHING AND DRESSING CHANGE 343-2811

Discharge Plan
Additional Followup Appointment:
    FOLLOWUP WITH DR. SAKINA KAMAL ON MONDAY,JULY 8th AT
    9:30am FOR ICD TEACHING AND DRESSING CHANGE 343-2811

## Discharge Summary

Created on 06/20/19 @ 1150

# Exhibit C

# AWARD OF Completion

Presented to

## Holly Frantzen

For successfully completing the

### Drug Abuse Education Course



12-12-2017
Date

Mrs. A. Black, Drug Treatment Specialist
FCI Aliceville, AL

*The Drug Abuse Education Course is a minimum of 12 hours. The goal of this program is to help the offender to make an accurate evaluation of the consequences of her alcohol/drug use and consider the need for treatment.*

BP-A0576
JUN 10

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

**MONETARY SPECIAL AWARD RECOMMENDATION - INMATE**

| Institution FMC Carswell | Unit 1-North | Date 12/21/2019 |
|---|---|---|
| Inmate's Name Frantzen, Holly | Register No. 54447-177 | Work Assignment Plumbing 2 |

Recommend Monetary Special Award in the amount of $150.00
In recognition of the following special act:

☐ An act of heroism.
☑ Voluntary acceptance and satisfactory performance of an unusually hazardous assignment.
☐ An act which protects the lives of employees or inmates, or the property of the United States.
☑ Suggestions which result in substantial improvements or cost-savings in institutional programs or operations.
☐ Other exceptionally meritorious or outstanding services.

Justification
Inmate Frantzen showed impressive work ethic and drive while installing large industrial piping in a confined space sub-basement area, to help complete the laundry project. The sub-basement area where we are working has very little room to move with multiple hazardous utilities. Inmate Frantzen was tasked with very difficult tasks that had to be completed on a deadline. Inmate Frantzen stayed level headed, took the tasks in stride, and completed the tasks to exemplary satisfaction. Inmate Frantzen truly went above and beyond her normal scope of work. If not for Inmate Frantzen's hard work and specialized skills in the trade the job could not have been completed within the deadline.

Submitted by

| Printed Name and Signature R. BECK | Title PLUMBING 2 |
|---|---|

Approved by

| Department Head | Date 12-31-19 |
|---|---|
| Chief Executive Officer | 2/24/20 |
| Regional Director (Awards Exceeding $150.00) | |
| Award Date | Approved Award Amount$ |

Prescribed by P5251

# Exhibit D



## Individualized Reentry Plan - Program Review  (Inmate Copy)

SEQUENCE: 02014440
Team Date: 06-27-2019

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: FRANTZEN, HOLLY LEANNE  54447-177

| | | | |
|---|---|---|---|
| Facility: | ALI ALICEVILLE FCI | Proj. Rel. Date: | 09-03-2031 |
| Name: | FRANTZEN, HOLLY LEANNE | Proj. Rel. Mthd: | GCT REL |
| Register No.: | 54447-177 | DNA Status: | OKL06549 / 07-12-2016 |
| Age: | 49 | | |
| Date of Birth: | 05-10-1970 | | |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| *NO DETAINER* | |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ALI | PLUMB 2 | PLUMBING 2 DETAIL | 06-20-2019 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ALI | ESL HAS | ENGLISH PROFICIENT | 03-05-2017 |
| ALI | GED HAS | COMPLETED GED OR HS DIPLOMA | 04-22-2017 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| ALI | | PLUMBER APPRENTICESHIP-FCI | 04-15-2018 | CURRENT |
| ALI | C | WOMEN'S REST BASED FITNESS | 06-16-2017 | 08-10-2017 |
| ALI | C | PAINT 1 FCI | 04-06-2017 | 05-25-2017 |
| ALI | C | BILLIARDS | 03-17-2017 | 05-05-2017 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 03-01-2017 |
| CARE1-MH | CARE1-MENTAL HEALTH | 03-06-2017 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| LOWER BUNK | LOWER BUNK REQUIRED | 10-16-2018 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 03-01-2017 |
| YES F/S | CLEARED FOR FOOD SERVICE | 03-01-2017 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP QUAL | RESIDENT DRUG TRMT QUALIFIED | 04-04-2018 |
| ED COMP | DRUG EDUCATION COMPLETE | 12-12-2017 |
| INELIGIBLE | 18 USC 3621 RELEASE INELIGIBLE | 04-16-2018 |
| NR WAIT | NRES DRUG TMT WAITING | 03-12-2018 |

### FRP Details

| Most Recent Payment Plan |
|---|

| | | | |
|---|---|---|---|
| FRP Assignment: | COMPLT   FINANC RESP-COMPLETED | | Start: 09-20-2017 |
| Inmate Decision: | AGREED   $75.00 | Frequency: | SINGLE |
| Payments past 6 months: | $0.00 | Obligation Balance: | $0.00 |

#### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |

**Payment Details**



**Individualized Reentry Plan - Program Review  (Inmate Copy)**   SEQUENCE: 02014440
Dept. of Justice / Federal Bureau of Prisons   Team Date: 06-27-2019
Plan is for inmate: FRANTZEN, HOLLY LEANNE  54447-177

| Most Recent Payment Plan |
|---|

Trust Fund Deposits - Past 6 months:  $0.00      Payments commensurate ?   N/A

New Payment Plan:    ** No data **

## Progress since last review

Frantzen returned from the hospital due to heart complications.  She continues to participate in the Plumber Apprenticeship detail. She has no disciplinary infractions on file.

## Next Program Review Goals

Due to your heart concerns try to exercise daily and eat a balanced diet of moderate portions. Establish a workout routine to improve overall health through release. Participate in a wellness program and/or treatment plans. Enroll in Silver Yoga by 11/2019.

## Long Term Goals

Utilize the chaplain services to assist in spiritual matters and provide spiritual counseling. Enroll/Complete RPP#6 Threshold by 01/2023.

## RRC/HC Placement

No.
Management decision - . RRC placement will be assessed in accordance with the Second Chance Act 17-19 months prior to release.  .

## Comments

Consult staff on an as-needed basis. RRC placement will be assessed in accordance with the Second Chance Act 17-19 months prior to release.
Reviewed 407/408.

Exhibit E

May 5, 2020

To whom it may concern,

My name is Johnna Legarreta and I am in the United States Military. I am writing in regards to requesting a compassionate release for my mother, Holly Leanna Frantzen. She is currently under a 16-year sentence given to her by Judge McBryde out of Fort Worth.

My mother is currently serving her time in Fort Worth Texas at FMC Carswell. She was transferred there about 8 months ago from FCI Aliceville following a very traumatic medical event. My mother, Holly Leanne Frantzen, inmate number 54447-177 is doing time for a drug conspiracy that revolves around meth. By no means would I ever deny that my mother was once an addict, However she does not deserve to be sitting in prison under conspiracy charges for drugs, instead she needs support, love, therapy and most importantly be surrounded by her family who can provide her growth and be motivation to be a positive asset to the community.

While serving her time at Aliceville, My mother struggled with depression and anxiety to which she was prescribed effexor extended release. The extended release specifically instructs to not crush or chew due to the nature of what they are intended for, however the medical staff crushed them up anyways and gave them to her. That night or the next morning, after my mother woke up not feeling good to which shortly after everything was a blur. She suffered from a heart attack, there is no heart conditions that run in my family, my mother has always been in great shape and all around healthy.

When this happened, no one contacted any of her family members, she was in ICU and could have lost her life, the mere fact that the medical staff crushed up effexor in the first place and wrongfully gave her the medication I believe caused her to have a heart attack and the care she received following was horrific. My mother could have died and I didn't even know about it until a friend of a friend who found out told me in a facebook message. I still didn't even get to talk to her until weeks after. She now struggles and lives in prison with PTSD, on top of her anxiety and depression. She is scared they will give her something else to cause health issues, she lives with horrible scares from them having to go in and save her life and a defibrillator that is protruding out of her chest, that in my opinion needs serious reevaluation and attention. I fear for her if the covid-19 gets to her, I sadly believe her heart is not strong enough to survive. I believe with her just having a heart attack and defibrillator she is at very high risk and I will do anything for her to be able to serve her time in the comfort of her own home quarantined away from everybody. I fear for her safety in there, I fear for her health and fear I will never see her again. She has me and my brother, a sister, three beautiful grandchildren that need her, my grandparents, which are her parents who are getting so old need her. We all need each other during this time. My mother is one of the most loving caring people I know, she means well and has a heart pure as gold. She gives everyone the benefit of the doubt and trust far too easily which is a huge factor in why I think she is in this situation. Yes, she has made some poor decisions, to which she will not deny but that shouldn't mean to leave her in prison and potentially risk her life and health safety. But please let her grant her Compassionate release so we can face this pandemic together and not lose her to it.

Again, My name is Johnna Legarreta, my point of contact is 813-895-6999 and my email is Johnna.legarreta@yahoo.com.

Please consider this request and feel free to reach out for any other questions or details.

Johnna Legarreta

May 5, 2020

Weldon Wyckoff

10039 Vista Springs Way

Louisville, KY 40291


To Whom it may concern:

As a matter of introduction, I am Holly Franzen's Father. I am writing to express my concern for her treatment in the Federal Prison System.

While incarcerated at the Alliceville, Alabama facility she was given time released medication crushed and floated in water which caused her to experience a near fatal heart attack. She had a defibrillator device implanted.

Now I am concerned that if she is exposed to the COVID-19 virus she would not survive it. There is no practical way her current facility at Carswell can provide an atmosphere to maintain social distance.

For this reason, I implore you to consider releasing her before this occurs. She would have a good support system here and would be protected from this pandemic.


Sincerely Yours

Weldon Wyckoff

May 5, 2020

To the Honorable Judge McBryde,

Holly Frantzen (my sister) is incarcerated at FMC Carswell. There have been cases of COVID-19 there and I'm very worried about my sister Holly.

Her health was severely compromised last year when she was given incorrect dosages of medications at another facility that caused her to have a heart attack and almost cost her life.

She is currently wearing a pacemaker and is at risk for severe complications if she were to contract the virus.

She has family in 3 different states that love and support her and want to see her safe and happy. She has a kind heart and a drive to succeed that can overcome past problems and allow her to be the positive and productive person that we know her to be.

My family and I believe she needs to be out of the medical facility where she's at and back home where she will be safe. We will be able to provide her with better medical care and help her to survive this deadly disease. One person has died at her facility and we are afraid if she contracts this deadly virus she will not be able to survive.

We are asking you to please release my sister and allow us the opportunity to take care of her.

Thank you,
Kelly Grother

also completed a drug program as well. I worked out every day and got into fitness. Then a tragedy happened to me. I was administered my medication at pill line wrongly. They opened an extended release capsule and the contents were placed in a cup or floated in water. After being off the meds for 3 days I took it and it released all at once and went to my heart and stopped it. I had cardiac death. I was without a pulse for 40 minutes. They were going to stop but a counselor would not give up and kept pumping. The nurse came in and shocked me twice they finally got a pulse. I was taken to the hospital and put on a breathing machine and in a coma for several weeks. I happened on June 4th, I came out of a coma or that I can remember on June 17th. I was very out of it and they put a difibulator and pace maker in my heart. When I returned to the compound and seeing everyones faces including the guards the looks were amazing I knew right then that God is into miracles and I am one of

them. I could barely walk
across the compound without
having to stop and breath but
at least I was aline.
   My plan to go back into society
is to go line in Kentucky with
my parents and family. When I
am able I plan to get a job
and put positive back into the
world. I plan to go to rehab, meeting
whatever it takes to overcome my
addiction. I know I was brought
back into the world with this
diffibulator in my heart, it shocks
me at times and hurts real bad
so that is just a reminder to me
what will happen if I do not
overcome this. I see how precious
life really is.

Holly Frantzen 54447-177
Federal Medical Center Carswell
P.O. Box 27137
Fort Worth, TX 76127



CERTIFIED MAIL

7019 1640 0001 2810 4785

RECEIVED

MAY 18 2020

11:38am Bt

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

United States District Court
Northern District of Texas
Judge John McBryde
501 West Tenth St. Room 310
Fort Worth, TX 76102

Legal mail

FMC Carswell
P.O. Box 27066
Fort Worth, TX 76127
Mailed _____
The enclosed letter was processed through special
mailing procedures for forwarding to you. The letter
has neither been opened nor inspected. If the writer
raises a question or problem over which this facility
has jurisdiction, you may wish to return the material
for further information or clarification.   (4)